UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| In re ) | Chapter 7, No. 15-31930-AMN |
| ) |  |
| CASHMAN'S CORNER, LLC ) |  |
| ) |  |
| Debtor ) |  |
| ) |  |
| GEORGE I. ROUMELIOTIS, TRUSTEE ) |  |
| ) |  |
| Movant ) |  |
| v. ) |  |
| ) |  |
| TOWN OF CLINTON, CONNECTICUT, ) |  |
| THE WATER POLLUTION CONTROL ) |  |
|   COMMISSION OF THE TOWN ) |  |
|   OF CLINTON ) |  |
| CONNECTICUT WATER COMPANY ) |  |
| BUSINESS LENDERS, LLC ) |  |
| CASHMAN'S TOOL & HARDWARE, LLC ) |  |
| ) |  |
| Respondents ) |  |

**MOTION FOR AUTHORITY TO SELL THE ESTATE'S INTEREST IN REAL ESTATE LOCATED AT 58 WEST MAIN STREET, CLINTON, CONNECTICUT BY PRIVATE SALE FREE AND CLEAR OF LIENS AND ENCUMBRANCES**

To the HONORABLE ANN M. NEVINS, Bankruptcy Judge:

    Now come George I. Roumeliotis, the Chapter 7 Trustee of Cashmans Corner, LLC (hereinafter "Trustee"), and pursuant to 11 U.S.C. §363(f) and Fed. R. Bankr. P. 6004(c), respectfully requests that the Court enter an Order authorizing the private sale of the bankruptcy estate's interest in the real property located at 58 West Main Street, Clinton, Connecticut, free and clear of liens and encumbrances as noted herein, and authorizing the disbursement of the proceeds from said sale as described herein.  In support thereof, the Trustee respectfully represents as follows:

1. On November 23, 2015 ("Petition Date"), the above-named Debtor filed a Voluntary Petition under the provisions of Chapter 7 of the Code, at which time George Roumeliotis was appointed as Trustee for the above-entitled estate.

2. The principal asset owned by the bankruptcy estate is a parcel of commercial property located at 58 West Main Street, Clinton, Connecticut ("Property"). The Property is described in a deed recorded with the Office of the Clerk of the Town of Clinton, Connecticut ("Clinton Land Records"), in Volume 322, Page 824; the metes and bounds description is as follows:

> All that certain piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Clinton, County of Middlesex and State of Connecticut, bounded and described as follows:
>
> NORTHERLY : by West Main Street, 110 feet, more or less;
> EASTERLY : by Grove Street, 141 feet, more or less;
> SOUTHERLY : by land now or formerly of Muriel H. Thomas, 115 feet, more or less; and
> WESTERLY : by land now or formerly of Friendly Ice Cream Corp of Connecticut, 166 feet, more or less
>
> Less said portion of land conveyed to the State of Connecticut by Warranty Deed recorded in Volume 166 at Page 953 of the Clinton Land Records.

3. Pursuant to this Court's Order dated August 18, 2016 (Document ID 29, hereinafter "Retention Order"), the Trustee was authorized to employ Real Living Wareck D'Ostilio ("Broker") for the purpose of marketing the Property and finding a purchaser for it. The Application to Employ that the Retention Order approved states that the Broker will be entitled to a six percent (6%) commission on the sale price of the Property, subject to further Order of the Court. Through the efforts of the Broker, a buyer has been found for the Property, subject to Court approval.

4. The Trustee, with the assistance of the Broker, has negotiated a sale of the Property to Senad Cecunjanin (or to a nominee which he may appoint), of 35 Meadow Road, Clinton, Connecticut ("Buyer"), for the total sum of $125,000.00 ("Purchase Price"), pursuant to the terms of a Purchase and Sale Agreement ("Agreement"). The Buyer has provided a deposit to the Broker in the amount of $10,000.00, with the balance of the Purchase Price to be paid at

the closing. A copy of the Agreement is attached hereto as Exhibit "A". All contingencies or conditions to the Buyer's obligations under the Agreement have passed or have been waived.

5. The Trustee is contemporaneously herewith filing a proposed form of Notice of Intended Private Sale of Estate Property, and Opportunity to Make Better and Higher Offer ("Notice") regarding the proposed sale of the Property.

6. The Trustee seeks authority to sell the Property to the Buyer (or to a nominee entity of its choice) free and clear of all liens, encumbrances, charges and claims of any kind. The Trustee believes that the following claims, liens or encumbrances may affect the estate's interest in the Property:

(a) Statutory or other liens arising from real estate taxes owed to the Town of Clinton for the 2015 and 2016 Grand Lists. The Trustee believes that the outstanding real estate taxes due to the Town of Clinton total approximately $8,700.00, which includes the first half of the 2016 Grand List (covering July 1 to December 31, 2017). Part of said tax obligations are secured also by the Real Estate Tax Lien in favor of the Town of Clinton dated May 3, 2017 and recorded at Volume 500, Page 763 of the Clinton Land Records. Further, a portion of said amount due to the Town of Clinton will be credited back to the Trustee at the closing on the sale to account for the period of time between the closing date and December 31, 2017.

(b) Mortgage from Cashman's Corner, LLC to Business Lenders, LLC, dated August 29, 2002 and recorded in Volume 322, Page 825 of the Clinton Land Records ("Mortgage"). According to an amended Proof of Claim filed by Business Lenders on April 18, 2016, there is $287,094.83 owed on account of a promissory note owed on the Mortgage ("Financing Transaction"). Business Lenders, LLC indicated in said Proof of Claim that the secured portion of its claim is $140,000, with the balance of the amount deemed unsecured.

(c) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded August 30, 2002, in Volume 322, Page 841 of the Clinton Land Records. Said UCC-1 Financing Statement was delivered by the Debtor as part of the Financing Transaction.

(d) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded August 30, 2002, in Volume 322, Page 844 of the Clinton Land Records. Said UCC-1 Financing Statement was delivered by the Debtor as part of the Financing Transaction.

(e) Notice of Lease by and between Cashman's Corner, LLC and Cashman's Tool & Hardware, LLC, dated August 29, 2002 and recorded in Volume 322, Page 847 of the Clinton Land Records. Upon information and belief, Cashman's Tool & Hardware, LLC, ceased business operations in 2010. See Item 18 of the Statement of Financial Affairs filed in the bankruptcy case of Jeffrey and Patricia Cashman, Docket No. 15-31862 (Document ID 12 in said case). Accordingly, Cashman's Tool & Hardware, LLC has no further interest in the Property, and the Debtor is not obligated to Cashman's Tool & Hardware, LLC in any way.

(f) Lessor's Agreement from Cashman's Corner, LLC to Business Lenders, LLC and the Small Business Administration dated August 29, 2002, and recorded at Book 322, Page 850 of the Clinton Land Records. Said Lessor's Agreement was delivered by the Debtor as part of the Financing Transaction.

(g) Collateral Assignment of Leases and Rentals from Cashman's Corner, LLC to Business Lenders, LLC, dated August 29, 2002 and recorded in Volume 322, Page 856 of the Clinton Land Records. Said document was delivered by the Debtor as part of the Financing Transaction.

(h) Collateral Assignment of Lease by Lessee to Lender with Consent by Lessor from Cashman's Corner, LLC to Business Lenders, LLC, dated August 29, 2002 and recorded in Volume 322, Page 853 of the Clinton Land Records. Said document was delivered by the Debtor as part of the Financing Transaction.

   (i) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded February 16, 2007, in Volume 409, Page 1125 of the Clinton Land Records, as amended by Amendment recorded May 19, 2017 in Volume 500, Page 1125 of the Clinton Land Records. Said UCC-1 Financing Statement and Amendment relate to the Financing Transaction.

   (j) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded February 16, 2007, in Volume 409, Page 1128 of the Clinton Land Records, as amended by Amendment recorded May 19, 2017 in Volume 500, Page 1129 of the Clinton Land Records. Said UCC-1 Financing Statement and Amendment relate to the Financing Transaction.

   (k) Lis Pendens in favor of Business Lenders, LLC, dated May 13, 2013 and recorded in Volume 470, Page 1011 of the Clinton Land Records. Said Lis Pendens relates to Business Lenders, LLC's efforts to collect on the sums due from the Financing Transaction.

   (l) Statutory or other lien associated with unpaid water use and sewer charges to the Connecticut Water Company, 93 West Main Street, Clinton, Connecticut, and/or the Clinton Water Pollution Control Commission, 54 East Main Street, Clinton, Connecticut ("Water and Sewer Charges").

The foregoing liens and encumbrances are collectively hereinafter referred to as "Liens". The Trustee seeks the entry of an Order providing for the sale of the Property free and clear of all liens and encumbrances, including, but not limited to, the Liens, with any valid and enforceable liens to attach to the proceeds of the sale.

   7. As stated above, Business Lenders, LLC, holds the only mortgage on the Property, and its debt exceeds the Purchase Price. As indicated below, however, Business Lenders, LCC, has consented to the sale of the Property free and clear of its Mortgage and other related liens and encumbrances, and has agreed that from the funds that would otherwise be available for its claim, the usual and customary closing costs, the outstanding real estate taxes

5

and Water and Sewer Charges, the Broker's commission and a carve out of up to $25,000.00 to the estate may be paid (provided that Business Lenders, LLC receives no less than $87,000 from the purchase price). Further, Business Lenders, LLC has agreed to subordinate the balance of its claim (other than the $87,000 described in this paragraph) to all other claims that would fall into the distribution priorities described in §726(a)(1) through §726(a)(5) of the Bankruptcy Code. Business Lenders, LLC understands that it is highly unlikely that it will receive any dividend on account of this subordinated claim.

8.  Accordingly, the Trustee seeks authority to disburse (or to authorize the Buyer's attorney or escrow agent to disburse) the proceeds from the sale of the Property in the following order:

(a)  First, to pay the usual and customary closing costs associated with the sale of real estate, including, but not limited to, recording fees, stamp and transfer taxes, tax adjustments, and the like;

(b)  Second, to pay the outstanding real estate taxes and other municipal liens, and the Water and Sewer Charges associated with the Property as of the closing;

(c)  Third, to pay the Broker the sum of $7,500.00 on its 6% commission on the Purchase Price;

(d)  Fourth, to pay the bankruptcy estate a "carve out" from Business Lenders, LLC's claim in an amount up to $25,000, provided that Business Lenders, LLC receives no less than $87,000 from the Purchase Price. In the event that the remaining proceeds after the payment of the items described in Paragraphs 7(a) through 7(c) are not sufficient to pay both a $25,000 carve out to the estate and $87,000 to Business Lenders, LLC, then the carve out shall be reduced by an amount necessary to pay Business Lenders, LLC the sum of $87,000;

(e)  Fifth, to pay to Business Lenders, LLC, no less than $87,000 as described in the immediately preceding subparagraph;

6

9. The Trustee believes that the Purchase Price and the terms contained in the Agreement are fair and reasonable, and that the proposed sale is in the best interest of the estate and creditors. The Broker has marketed the Property for an extended period of time, and the Trustee has received several offers over that time, all of which fell through due to the condition of the Property or due to financing or other contingencies that prospective buyers could not obtain. Also, the Trustee is not aware of any connection between the Trustee or the Debtor and the Buyer, and further, the Trustee is not aware of any collusive bidding or other improper conduct by the Buyer. Accordingly, the Trustee believes that the proposed Buyer is a good faith arms-length purchaser. Further, the Trustee believes that the contemplated sale is likely to generate sufficient funds to pay non-insider claims in full. Lastly, the carve out negotiated with Business Lenders, LLC as described herein (which includes a subordination of the balance of Business Lenders, LLC's claim) is expected to pay a meaningful dividend to the claims filed by other creditors (which total approximately $26,000).

10. A copy of this Motion and the Notice of Intended Private Sale will be served on the Debtor, and all creditors and parties in interest after the Court assigns an objection/counteroffer deadline and schedules a hearing on this Motion.

11. The Buyer has indicated a preference to close on the purchase of the Property as soon as possible, and the Trustee would like to close on the sale as soon as possible due to the deteriorating condition of the Property. Accordingly, the Trustee requests that the Court waive the 14 day stay provision contained in Fed. R. Bankr. P. 6004(h).

WHEREFORE, the Trustee respectfully requests the entry of the following Orders:

1. An Order approving the Agreement attached hereto as Exhibit "A", providing for the sale of the Property as is more fully set forth herein free and clear of all liens and encumbrances (including, but not limited to the liens and encumbrances listed in Paragraph 6 herein), finding that the Buyer is a good faith arms-length purchaser, and providing the authority to disburse (or to authorize the Buyer's attorney or escrow agent to make the disbursement) the proceeds in accordance with the terms of Paragraph 8 herein;

2. An Order providing that the balance of the claim of Business Lenders, LLC after the application of the sum paid to it pursuant to Paragraph 8(e) of this Motion shall be subordinated to all other claims that would fall into the distribution priorities described in §726(a)(1) through §726(a)(5) of the Bankruptcy Code;

3. An Order authorizing the Trustee to execute and deliver any and all documents, including but not limited to, deeds and settlement statements, and to perform any and all acts necessary to conduct and close the sale of the Property as contemplated herein; and

4. For such other and further relief as the Court may deem just and proper.

                           GEORGE I. ROUMELIOTIS, TRUSTEE

Dated: July 11, 2017

By: /s/ George I. Roumeliotis
GEORGE I. ROUMELIOTIS, ESQ.
(CT17532)
For ROUMELIOTIS LAW GROUP, P.C.
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel. (203) 580-3355
george@roumeliotislaw.com

BUSINESS LENDERS, LLC, HEREBY CONSENTS, PURSUANT TO 11 U.S.C. §363(f)(2), TO THE ENTRY OF AN ORDER APPROVING THIS MOTION WHICH INCLUDES THE PROVISION OF A CARVE OUT TO THE BANKRUPTCY ESTATE FROM PROCEEDS OF ITS COLLATERAL, ALL AS DESCRIBED HEREIN.

                           BUSINESS LENDERS, LLC

Dated: July 11, 2017

By: /s/ Louis J. Dagostine, Esq.
LOUIS J. DAGOSTINE, ESQ.
For CIULLA & DONOFRIO, LLP
127 Washington Avenue
P.O. Box 219
North Haven, CT 06473
Tel. (203) 239-9828
ldagostine@cd-llp.com

8

# REAL ESTATE
# PURCHASE and SALES AGREEMENT

NOTICE: This is a legal and binding Agreement for the purchase and sale of property. It is appropriate for most BUT NOT ALL such transactions. If this Form does not appear to either Buyer or Seller to be appropriate for a particular transaction you are urged to discuss the purchase or sale with an attorney **BEFORE YOU SIGN**. Most, but not all, provisions of this Agreement are subject to negotiation prior to execution.

**1. THIS Agreement** to buy and sell real property is made between:

SELLER: __George Roumeliotis, trustee in Bkcy for Cashman's Corner, LLC__
   (Names of Sellers)      hereinafter called Seller

ADDRESS: __100 Pearl Street, 14th Floor Hartford, CT  06103__
   (Address of Sellers)     Town/City     State    Zip

BUYER: __Senad Cecunjanin__
   (Names of Buyers)     hereinafter called Buyer

ADDRESS: __35 Meadow Road__      __Clinton__     __CT__
   (Address of Buyers)     Town/City     State    Zip

Seller agrees to sell and Buyer agrees to buy for the purchase price and upon the terms and conditions stated herein the real property with all buildings and other improvements thereon and all appurtenances thereto, in the same condition as they were on the date of Buyer's signature, reasonable wear and tear excepted.

**2. REAL PROPERTY TO BE PURCHASED:**

a) Street Address __58 West Main Street__

b) City/Town __Clinton__ Connecticut, Zip _____

c) Described as: __2,340 SF building on approximately 0.37 acres formerly known as Cashman's Corner__

**3. INCLUDED IN SALE PRICE:** The Real Property shall include all items permanently attached to the property on the date Buyer signed this Agreement. Included in this sale as part of the Real Property are the buildings, structures and improvements now thereon, and the fixtures belonging to the Seller and used in connection therewith, including, if any, all blinds, window shades, screens, doors, door and window hardware, wood and gas stoves, storm windows, landscaping, awnings, shutters, electrical and lighting fixtures, door mirrors, pumps, mailboxes, plumbing fixtures, cabinetry, door and cabinet hardware, pool houses and other outbuildings, mantles, flagpoles, alarm system and codes, swimming pool and swimming pool pumps and equipment (if any), garbage disposal, automatic garage openers, central air conditioning equipment, and built-in dishwashers (Cross out and initial any items in this paragraph present on the Real Property but not included in the sale.)

ADDITIONAL PERSONAL PROPERTY, if any, to be included:
_____
_____

**4. PURCHASE PRICE** $ __125,000.00__ , payable as follows:

| | |
|---|---|
| a) By initial Deposit submitted herewith receipt of which is hereby acknowledged............... | $ 5,000.00 |
| b) By additional Deposit due upon Seller's Acceptance: ................................................. | $ 5,000.00 |
| c) By Proceeds of: Financing as specified in paragraph 6 below................................... | $ NA |
| d) By _____ ................... | $ NA |
| e) Balance to be paid by certified check or bank check at Closing................................. | $ 115,000.00 |
| **TOTAL PRICE TO BE PAID** (Must equal "Purchase Price")..................... | $ 125,000.00  ⓍⓍ |

Buyer: _SC_      Seller: _GR_
BUYER AND SELLER MUST INITIAL EACH PAGE      Page 1 of _4_

COPYRIGHT 2012 GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC. – ALL RIGHTS RESERVED.
THIS FORM WAS REVIEWED BY LEGAL COUNSEL OF THE GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC.    Revised 5/23/2012

**5. DEPOSITS:** The Deposit(s) specified above shall be made at the stated times. All Deposits shall be made by check, payable to the Listing Broker and shall be deposited as required under Connecticut General Statutes Section 20-324k. All checks are subject to collection and failure of collection shall constitute a default. Except at time of closing, when the Deposit shall be delivered to Seller or Seller's designee, the Listing Broker shall not pay the Deposit to anyone without the written consent of all parties to this Agreement subject to Connecticut General Statutes Section 20-324k(d). In the event any Deposit funds payable pursuant to this Agreement are not paid by Buyer, Seller may give written notice of such failure to Buyer. If such notice is given and a period of 3 (three) days pass without Buyer paying the Deposit owed, Seller may declare Buyer in default and shall have the remedies set forth in Paragraph 14.

**6. FINANCING CONTINGENCY:** NA

a) Amount $ __NA__    b) Maximum Initial Interest Rate __NA__ %

c) Term: __NA__ years    d) Commitment Date: __NA__

e) Type:    Conventional Fixed    Variable    FHA    VA    CHFA    Other_____

Buyer's obligation is contingent upon Buyer obtaining financing as specified in this paragraph. Buyer agrees to apply for such financing immediately and diligently pursues a written mortgage commitment on or before the Commitment Date.

f) If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 PM on or before said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer. Otherwise, the Financing Contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.

**7. CONDITION OF PREMISES:** Buyer represents that Buyer has examined the Real Property and is satisfied with the physical condition subject to the Inspection Contingency if applicable. Neither Seller nor any representative of the Seller or Buyer has made any representation or promise other than those expressly stated herein which Buyer has relied upon in making this Agreement.

**8. INSPECTION CONTINGENCY: Broker Recommends**
(a) Inspections shall be completed and results reported to Seller on or before 5:00 P.M. on: __14 days from contract execution__.

(b) Seller agrees to permit Buyer's designees to inspect the Real Property during the period from Seller's acceptance until the date set forth in (a) above. If Buyer is not satisfied with the physical condition of the Real Property and so notifies Seller in writing prior to the time and date specified in (a) above, then Buyer may, at Buyer's option, terminate this Agreement. Buyer may give Seller the option to correct the conditions that are unsatisfactory to the Buyer. Should Buyer elect to terminate this Agreement or Seller is unwilling to correct any unsatisfactory conditions, the Buyer shall notify Seller on or before 5:00 P.M. on: __17 days from contract execution__ Buyer's election to terminate this Agreement, and if Terminated this Agreement shall be null and void and any Deposit monies paid hereunder shall be returned immediately to Buyer and neither Buyer nor Seller shall have any claims against each other under the terms of this Agreement. If Buyer fails to notify Seller as provided herein, this contingency shall be deemed satisfied and this Agreement shall continue in full force and effect.

(c) If initialed below, **Buyer does NOT** choose to have any inspections performed and **WAIVES** any rights to object to any defects in the Real Property that would have been disclosed by a full and complete inspection.

Initials _____

**9. LEAD-BASED PAINT.** If the Property is "target housing" under federal law (meaning, with some exceptions, housing built before 1978), Seller must permit Buyer, at Buyer's expense, a 10-day period to conduct a risk assessment or inspection of the Real Property for the presence of lead-based paint and/or lead-based paint hazards before Buyer is obligated under this Agreement. **Buyer may waive this right of inspection.** Buyer to provide Seller or Sellers' attorney with written notice of the presence of defective lead-based paint or lead-based paint hazards along with a copy of the inspection and/or risk assessment within __NA__ days (insert "ten" or a mutually agreed number of days) of the date of acceptance of this Agreement. If such notice is given and Seller and Buyer cannot reach a mutually satisfactory agreement within seven (7) days of said notice regarding the defective lead-based paint or lead-based paint hazards, either party shall have the option of terminating this Agreement and this Agreement shall be null and void.

_____ (Initial) Buyers waive the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Buyer: _(signature)_    Seller: _(signature)_
BUYER AND SELLER MUST INITIAL EACH PAGE    Page 2 of __4__

COPYRIGHT 2012 GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC. – ALL RIGHTS RESERVED.
THIS FORM WAS REVIEWED BY LEGAL COUNSEL OF THE GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC.    Revised 5/23/2012

**10. PROPERTY MAINTENANCE, OCCUPANCY, POSSESSION:**
(a) PROPERTY MAINTENANCE.
Seller agrees to maintain Real Property with all buildings, landscaping and other improvements thereon, all appurtenances thereto, and any personal property included in the sale in the same condition, reasonable wear and tear excepted, as it was on the date of this Agreement.

(b) OCCUPANCY, POSSESSION: CLOSING DATE: __May 30, 2017 or 15 days after approval by Bankruptcy Court whichever is sooner__
Unless otherwise stated herein, Buyer shall receive exclusive possession and occupancy with keys on Closing Date. The Real Property shall be maintained by Seller until time of Closing and shall be transferred in broom clean condition, free of debris. Buyer shall have the right to a walk through inspection of the Property within 48 hours prior to the Closing Date. Closing shall be held at an office to be determined by Buyer's attorney in the county where the Real Property is located or at such place as designated by Buyer's mortgage lender.

**11. WARRANTY DEED:** Seller agrees to convey fee simple title of the Real Property to Buyer by a good and sufficient Warranty Deed subject only to any and all provisions of any ordinance, municipal regulation, public or private law, restrictions and easements as appear of record, if any, provided they do not affect marketability of title, current real estate taxes, water and sewer charges, and current water and sewer assessment balance, if any; except in those cases where a fiduciary's Deed or other form of court ordered deed may be required to pass title. Seller warrants that Seller has no notice of any outstanding violations from any town, city or State agency relating to the Real Property.

**12. MARKETABLE TITLE:** Title to be conveyed by Seller shall be marketable as determined by the Standards of Title of the Connecticut Bar Association now in force. Seller further agrees to execute such documents as may be reasonably required by Buyer's title insurance company or by Buyer's mortgage lender. Should Seller be unable to convey Marketable Title as defined herein, Buyer may accept such Title as Seller can convey or may reject the Unmarketable Title, receive back all Deposit money, and declare this Agreement null and void. Upon such rejection and repayment to Buyer of all sums paid on account hereof, this Agreement shall terminate and the Parties hereto shall be released from all further claims against each other.

**13. ADJUSTMENTS:** Real Estate Taxes will be adjusted as of the Closing Date by the Uniform Fiscal Year basis except in the Towns of Meriden or Wallingford where taxes will be adjusted by the Assessment Year Method. All other adjustments, including Association fees, fuel oil, water and sewer usage, interest on sewer or water assessments, utilities, rent, if any, and issues regarding funds at closing and unavailability of releases at closing and like matters shall be adjusted pro rata as of the Closing Date in accordance with the Residential Real Estate Closing Customs, New Haven County, as adopted by the New Haven County Bar Association, now in force. Rent security deposits, if any, shall be credited to Buyer by Seller on the Closing Date and shall include any interest accrued to the tenant.

**14. BUYER'S DEFAULT:** If Buyer fails to comply with any Terms of this Agreement by the time set forth for compliance and Seller is not in default, Seller shall be entitled to all initial and additional Deposit funds provided for in section 4, whether or not Buyer has paid the same, as liquidated damages and both parties shall be relieved of further liability under this Agreement. If legal action is brought to enforce any provision of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees.

**15. RISK OF LOSS, DAMAGE:** All risk of loss or damage to said Real Property by fire, theft or other casualty until delivery of Deed shall be upon the Seller. In the event of loss or damage independently appraised at more than $10,000.00, Buyer shall have the option to receive any insurance payment on account of said damage and take Title, or rescind this Agreement and receive back all Deposit money paid. In such case, all rights and obligations of the parties under this Agreement shall terminate.

**16. COMMON INTEREST COMMUNITY:** If the property is a unit in a condominium or other common interest community, Seller will deliver the resale documents in accordance with Connecticut General Statutes Section 47-270.

**17. LISTING BROKER**__Kenneth S. Ginsberg, RLWD Commercial__                              PH#__203-276-6266__

Dual Agent – If the Listing Agent is acting as a Dual Agent, a CONSENT FOR DUAL AGENCY FORM SHALL BE ATTACHED to this Agreement.

COOPERATING BROKER__NA__                              PH#__NA__            Buyer Agent    Sub Agent

Buyer: _SC_
BUYER AND SELLER MUST INITIAL EACH PAGE

Seller: _GR_
Page 3 of __4__

COPYRIGHT 2012 GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC. – ALL RIGHTS RESERVED.
THIS FORM WAS REVIEWED BY LEGAL COUNSEL OF THE GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC.    Revised 5/23/2012

**18. PROPERTY CONDITION REPORT:** Seller and Buyer acknowledge that if a written residential property condition report is required by statute (CT Gen. Stat. 20-327b et seq.) and Seller has not provided Buyer with the required report, Seller will credit Buyer with the sum of $500.00 at closing.

**19. EQUAL HOUSING RIGHTS:** Buyer acknowledges the right to be shown any property within Buyer's stated price range in any area specified by Buyer which is available to Agent for Showing. This Agreement is Subject to Connecticut General Statutes prohibiting discrimination in commercial and residential real estate transactions (Connecticut General Statutes Title 46a, Chapter 814c).

**20. NO ASSIGNMENT, BINDING EFFECT:** This Agreement may not be assigned by either party without the written consent of the other, but shall be binding upon the heirs, executors, administrators and successors of the parties hereto.

**21. ADDENDUM:** The following attached Addenda and/or Riders are part of this Agreement:

Seller's Property Condition Disclosure     Agency Disclosure     Title X Lead Based Paint Hazards Disclosure

Dual Agency Consent

Multi-family Tenant Rider

Other_____

**22. ADDITIONAL TERMS AND CONDITIONS:** Seller shall provide buyer with Environmental reports, surveys and title reports in possession of Seller's mortgagee within five days of execution of contract. Contract is subject to approval of Bankruptcy court to be obtained by Seller.

**23. FAX TRANSMISSION/ELECTRONIC MAIL:** The parties acknowledge that this Agreement and any addenda or modification and/or any notices due hereunder may be transmitted between them by facsimile machine/electronic mail and the parties intend that a faxed document or an electronic mail document containing either the original and/or copies of the parties' signatures shall be binding and of full effect.

**24. COMPLETE AGREEMENT:** This Agreement contains the entire agreement between Buyer and Seller concerning this transaction and supersedes any and all previous written or oral agreements concerning the Property. Any extensions or modifications of this Agreement shall be in writing signed by the parties.

**25. NOTICE:** Any notice required or permitted under the Terms of this Agreement by Buyer or Seller shall be in writing addressed to the Party concerned using the address stated in Paragraph 1 of this Agreement or to such party's attorney or to the party's Listing Broker or Cooperating Broker designated in paragraph 17.

**26. APPLICABILITY:** Buyer and Seller agree and understand that although this form has been made available by the Greater New Haven Association of REALTORS, Inc. the Association assumes no responsibility for its content in relation to the transaction between the parties and is not a party to this Agreement. This Agreement or parts of it may not be suitable for all transactions or conditions. The parties should determine its applicability.

**27. BUYER AND SELLER** acknowledges receipt of a copy of this Agreement upon their signing same.

**28. TIME TO ACCEPT:** Seller shall have until May 15, 2017 _____ to accept this Agreement.
(Date & Eastern Standard Time)

**29. SIGNATURES:**

_____ 5/11/17        _____, Ch. 7 Trustee 5/11/17
Buyer's Signature       Date            Seller's Signature  in Bankruptcy of Cashman's  Date
                                                            Corner LLC

_____ 5/11/17        _____
Buyer's Signature       Date            Seller's Signature                      Date

_____ 5/11/17        _____
Buyer's Signature       Date            Seller's Signature                      Date

Buyer: _____                                                  Seller: _____
BUYER AND SELLER MUST INITIAL EACH PAGE                         Page 4 of 4

COPYRIGHT 2012 GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC. – ALL RIGHTS RESERVED.
THIS FORM WAS REVIEWED BY LEGAL COUNSEL OF THE GREATER NEW HAVEN ASSOCIATION OF REALTORS, INC.

Revised 5/23/2012

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re | ) Chapter 7, No. 15-31930-AMN |
| CASHMAN'S CORNER, LLC | ) |
| Debtor | ) |
| GEORGE I. ROUMELIOTIS, TRUSTEE | ) |
| Movant | ) |
| v. | ) |
| TOWN OF CLINTON, CONNECTICUT, THE WATER POLLUTION CONTROL COMMISSION OF THE TOWN OF CLINTON CONNECTICUT WATER COMPANY BUSINESS LENDERS, LLC CASHMAN'S TOOL & HARDWARE, LLC | ) |
| Respondents | ) |

**ORDER ON MOTION FOR AUTHORITY TO SELL THE ESTATE'S INTEREST IN REAL ESTATE LOCATED AT 58 WEST MAIN STREET, CLINTON, CONNECTICUT BY PRIVATE SALE FREE AND CLEAR OF LIENS AND ENCUMBRANCES**

Upon consideration of the Trustee's Motion for Authority to Sell the Estate's Interest in Real Property Located at 58 West Main Street, Clinton, Connecticut, by Private Sale Free and Clear of Certain Liens and Encumbrances ("Motion"), after notice and hearing, and for good cause shown, it is hereby

FOUND that the Buyer described below is an arms-length purchaser, and the transaction contemplated herein shall be deemed to have been made in good faith; and it is further

ORDERED that the Trustee is authorized to sell to Senad Cecunjanin, of 35 Meadow Road, Clinton, Connecticut ("Buyer"), or to a nominee which he may appoint, the bankruptcy estate's interest in the real property at 58 West Main Street, Clinton, Connecticut ("Property"),

which is more particularly described in a deed recorded with the Office of the Clerk of the Town of Clinton, Connecticut ("Clinton Land Records"), in Volume 322, Page 824, in accordance with the terms and conditions contained in the Motion; and it is further

ORDERED that the sale authorized herein shall be free and clear of all liens and encumbrances, including, but not limited to, the following:

    (a)    Statutory or other liens arising from any real estate taxes owed to the Town of Clinton, Connecticut, including the Real Estate Tax Lien in favor of the Town of Clinton recorded at Volume 500, Page 763 of the Clinton Land Records;

    (b)    Mortgage from Cashman's Corner, LLC to Business Lenders, LLC, recorded in Volume 322, Page 825 of the Clinton Land Records;

    (c)    UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded in Volume 322, Page 841 of the Clinton Land Records;

    (d)    UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded in Volume 322, Page 844 of the Clinton Land Records;

    (e)    Notice of Lease by and between Cashman's Corner, LLC and Cashman's Tool & Hardware, LLC, recorded in Volume 322, Page 847 of the Clinton Land Records;

    (f)    Lessor's Agreement from Cashman's Corner, LLC to Business Lenders, LLC and the Small Business Administration recorded at Book 322, Page 850 of the Clinton Land Records;

    (g)    Collateral Assignment of Leases and Rentals from Cashman's Corner, LLC to Business Lenders, LLC, recorded in Volume 322, Page 856 of the Clinton Land Records;

2

  (h) Collateral Assignment of Lease by Lessee to Lender with Consent by Lessor from Cashman's Corner, LLC to Business Lenders, LLC, recorded in Volume 322, Page 853 of the Clinton Land Records;

  (i) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded in Volume 409, Page 1125 of the Clinton Land Records, as amended by Amendment recorded in Volume 500, Page 1125 of the Clinton Land Records;

  (j) UCC-1 Financing Statement in favor of Business Lenders, LLC, recorded in Volume 409, Page 1128 of the Clinton Land Records, as amended by Amendment recorded in Volume 500, Page 1129 of the Clinton Land Records;

  (k) Lis Pendens in favor of Business Lenders, LLC, recorded in Volume 470, Page 1011 of the Clinton Land Records; and

  (l) Statutory or other liens associated with unpaid water use and sewer charges to the Connecticut Water Company and/or the Clinton Water Pollution Control Commission ("Water and Sewer Charges").

and it is further

  ORDERED that the Trustee is hereby authorized to prepare, execute and deliver any and all documents and to perform any and all acts necessary to sell the Property as authorized herein, whether such documents are known and executed at closing, or become known and necessary in the future; and it is further

  ORDERED that the Trustee is hereby authorized to disburse (or may authorize the Buyer's attorney or escrow agent to disburse) the proceeds from the sale as follows:

  (a) First, to pay the usual and customary closing costs associated with the sale of real estate, including, but not limited to, recording fees, stamp or transfer taxes, tax adjustments, and the like ("Closing Costs");

3

  (b) Second, to pay the outstanding real estate taxes and other municipal liens, and the Water and Sewer Charges associated with the Property as of the closing ("Municipal Charges");

  (c) Third, to pay Real Living Wareck D'Ostilio the sum of $7,500.00 for its real estate sales commission associated with the sale authorized herein ("Real Estate Commission");

  (d) Fourth, to pay the bankruptcy estate a "carve out" from Business Lenders, LLC's claim in an amount up to $25,000, provided that Business Lenders, LLC receives no less than $87,000 from the Purchase Price. In the event that the remaining proceeds after the payment of the Closing Costs, Municipal Charges and Real Estate Commission are not sufficient to pay both a $25,000 carve out to the estate and at least $87,000 to Business Lenders, LLC, then the carve out shall be reduced by an amount necessary to pay Business Lenders, LLC the sum of $87,000; and

  (e) Fifth, to pay to Business Lenders, LLC, no less than $87,000 as described in the immediately preceding subparagraph ("Business Lenders Payment");

and it is further

  ORDERED that the balance of the claim of Business Lenders, LLC after the application of the Business Lenders Payment shall be subordinated to all other claims that would fall into the distribution priorities described in §726(a)(1) through §726(a)(5) of the Bankruptcy Code; and it is further

  ORDERED that the 14 day stay contained in Fed. R. Bankr. P. 6004(h) is hereby waived, so that the Trustee shall be authorized to close on the sale of the Property immediately upon the entry of this Order.